UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES,

        Plaintiff,                     Case No. 13-20023
                                          Honorable Thomas L. Ludington

v.

DARALD SCHULTZ,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART MOTION TO SUPPRESS**

Darald Schultz claims that officers violated his Fourth Amendment rights when they searched his property without a warrant and without his consent, and then seized almost 600 marijuana plants. The government concedes the officers had no warrant, and the evidence does not establish a voluntary consent to search. Mr. Schultz's motion to suppress the evidence seized from his residence will be granted in part.

**I**

In mid-June 2012, the Thumb Area Narcotics Unit received an anonymous tip that marijuana was being grown in an old truck box at 6612 Washburn Road in Tuscola County (Schultz's residence). Schultz lives on a rural property surrounded by fields and bordered by Washburn Road to the east. A long dirt driveway leads from Washburn into the property, passes just north of Schultz's house and barn, and then extends westward into his land. The tip indicated that the grow operation on Schultz's land could be seen from Washburn Road.

Officers Justin Nitz and A. J. Wetzel responded to the anonymous tip on June 19, 2012.[1] They drove to Schultz's property with Officer Nitz behind the wheel and Officer Wetzel in the passenger seat. They first passed by the property on Washburn Road going south (Washburn runs north-south). Officer Wetzel told Officer Nitz that "he thought he saw something," May 13, 2013 Hr'g Tr. 32,[2] so they returned for another pass. After looping back to the property — this time from the south — Wetzel saw a truck bed and some black planters just south of Schultz's house and about forty yards from the roadway. He testified that the plants in the planters "looked like suspected marijuana," but at the time he "wasn't sure." *Id*. at 16. Detective Nitz did not see any plants because he was driving. *Id*. at 32.

Despite Wetzel's doubts, and the fact that the officers had no search warrant, they pulled off of Washburn and into Schultz's driveway, intending to "ask for consent" to search the premises. *Id*. at 44. Although both officers testified they did not see it at the time, a sign was posted next to the driveway that warned against trespassing. Def.'s Ex. 18. Two other "No Trespassing" signs were also posted on Schultz's property line. The sign next to the driveway advised "all persons, officers, and governmental agencies" of 18 U.S.C. §§ 241, 241; and 42 U.S.C. §§ 1982, 1983, 1985, and 1986. *Id*. The sign also quoted portions of § 241.[3] Schultz testified that the signs had been in place "[f]or at least ten years." May 13, 2013 Hr'g Tr. 53.

---

[1] Officer Wetzel testified he had been to Schultz's property before, approximately one year earlier (June of 2011). May 13, 2013 Hr'g Tr. at 5–6. According to Wetzel, the previous visit to Schultz's property was also related to a tip "of a marijuana grow at that location," *id*. at 5, but when the officer knocked on the door and received no answer, he did not "pursue the tip any further," *id*. at 25.

[2] The May 13, 2013 hearing transcript cited to throughout this opinion is an uncertified rough copy.

[3] "If two or more persons conspire to injure, oppress, threaten, or intimidate any [citizen] . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured –

The officers drove past the sign, up the driveway, and slowly approached Schultz's residence. They saw him standing in front of his house with his girlfriend, his mother, and a farmhand. Then the officers parked their vehicle, got out, and approached the group.

### A

Detective Nitz testified that he "made contact" with Schultz and the other three individuals in the driveway. According to Nitz, he "asked who owned the residence or who lived there, and Mr. Schultz said that he did. [Nitz] then informed [Schultz] of tip information . . . and asked for consent to search at the residence." May 13, 2013 Hr'g Tr. 33.

Detective Nitz explained how Schultz reacted after the officer requested permission to "search the property for a marijuana grow operation":

> He was – he didn't answer me right away. He was holding a white canister in his hand, and he kept rolling it up in his shirt, and I asked him what he had in his hand, and he handed me this bottle and it was a rooting hormone commonly used to root marijuana clone plants. And I said to him well, there's no real reason for you to have that rooting hormone unless you do have some sort of grow operation here. At that time he said, yes, I am growing marijuana, come on back.

*Id*. at 34. Detective Nitz's testimony continued:

> Q: what happened after he said that to you?
>
> A: He started walking towards the south side of the residence along – there's an attached garage and then there's a barn farther west. You walk between the attached garage and the barn to the south and he said – walked up and said this is where it is.
>
> Q: And when he said this is where it is, what was he showing you?
>
> A: That's where the truck box was located and there was also a topper to that box that was flipped over, numerous 55 gallon buckets and then the 7 plants that Detective Wetzel had seen from the road. They were all marijuana plants.

*Id*. at 35–36.

---

They shall be fined [not more than $10,000] or imprisoned not more than ten years or both; and if death results . . . they shall be [subject to imprisonment] for any term of years or for life." Def.'s Ex. 18.

Officer Wetzel confirmed that "Detective Nitz handled the conversation" when they first approached Schultz. *Id*. at 18. He testified regarding the ensuing encounter as follows: "Detective Nitz made contact with the people in the driveway, informed them of who we are. At that time, we got consent and the suspect had taken us right to the marijuana plants." *Id*. at 7.

Notably, Wetzel indicated that it was his job "to secure the scene" and to "observe." *Id*. But he was unable to recall the "exact words" Schultz used to give consent for the officers' search of his property. *Id*. He then acknowledged that he did not "recall hearing the consent" at all. *Id*. at 19.

**B**

The gap in Officer Wetzel's recollection is perhaps explained by Schultz's memory of events. Schultz testified that the officers drove onto his property in a van, disembarked, and approached him where he was standing with his mother, his girlfriend, and a farmhand. He testified, just as the officers did, that they attributed their visit to an anonymous tip regarding a marijuana grow operation.

Schultz then explained that after the officers approached him and informed him of the tip, he asked to see a search warrant. According to Schultz, Officer Wetzel said "that they didn't need one," *id*. at 50, and then walked away from Officer Nitz and himself. Schultz recalled that Detective Nitz asked questions while Officer Wetzel "was walking around." *Id*. Then, after a brief period, Officer Wetzel called out, "we got something over here," *id*. at 51, and beckoned Detective Nitz and Schultz to the west side of Schultz's home, just north of the marijuana grow operation, *id*. at 55–56. Schultz testified that he never gave either officer consent to search his property. *Id*. at 51–52.

The Court questioned Mr. Schultz during the hearing and asked him to describe the events surrounding the officers' approach and those that followed. Schultz answered, "[t]he one officer, after I asked him for a search warrant, he – the Officer Wetzel said that they didn't need one, that they could see it from the road and he was walking around while I was talking to the other officer." *Id*. at 81. The questioning went on:

> Q: What did Officer Nitz say after you requested or asked if they had a warrant?
>
> A: He was trying to get me to give him consent. He was asking me questions still.
>
> Q: What kind of questions?
>
> A: Like if you don't cooperate with us that you could go to jail or we'll haul you in right now and trying to scare me into giving consent.
>
> \*   \*   \*   \*   \*
>
> Q: At any time prior to Officer Nitz – excuse me, Wetzel saying I think we've got something here, did you ever admit to the officer that you had a marijuana grow on the property?
>
> A: Not at that time.
>
> Q: There did come a time where you accepted responsibility for the marijuana was yours, correct?
>
> A: Correct.
>
> Q: When did that happen?
>
> A: That's after they went over and saw it and then came back and asked if that was only mine.
>
> Q: And you said that it was?
>
> A: Yes.

*Id*. at 82, 84.

**C**

After the marijuana plants were discovered, Officer Wetzel remained with them while Detective Nitz searched Schultz's residence[4] and interviewed both Schultz and his girlfriend. Finding no plants in the home, the officers seized the 584 plants contained in the grow operation located just south of the house. Schultz, who cannot read or write with any proficiency, signed a statement that was written by his girlfriend confirming his ownership of the marijuana plants that were seized. This statement, however, did not contain any indication that the search and subsequent seizure were carried out pursuant to Schultz's consent. Neither officer obtained a written or signed consent form from Schultz.

Mr. Schultz was indicted in January 2013, and on March 28, 2013 he filed a motion to suppress and dismiss. Schultz's counsel argues that the seizure of the marijuana was unconstitutional because the officers had no legal authority to be on his property and the plants were not in "plain view." The government maintains that the warrantless search was reasonable because the marijuana "was in plain view." Pl.'s Resp. 4.

On May 13, 2013, an evidentiary hearing was held to determine the admissibility of the 584 marijuana plants seized from Mr. Schultz's residence.

**II**

The Fourth Amendment to the United States Constitution forbids "unreasonable searches and seizures" by the government. U.S. Const. amend. IV, § 1. Generally, apart from a few specifically delineated exceptions, "every governmental search and seizure must be made pursuant to a warrant." *United States v. Taylor*, 248 F.3d 506, 511 (6th Cir. 2001). The

---

[4] It is also disputed whether Schultz gave consent for the search of his home (Detective Nitz testified Schultz gave implied consent by walking into the house after being questioned about whether it contained marijuana; Schultz testified the officers entered the residence and he simply followed). No marijuana plants were seized from Mr. Schultz's residence.

government bears the burden of proving the legality of a warrantless search or seizure. *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (citing *United States v. Haynes*, 301 F.3d 669, 667 (6th Cir. 2002)).

Mr. Schultz's premises was not searched, and the marijuana found was not seized, pursuant to a warrant. Such a presumptively unreasonable search and seizure, *see United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2005) (citation omitted), requires proof that an exception to the warrant requirement applies.

The two warrant exceptions discussed by Schultz and the government — the plain view doctrine and voluntary consent to search — will be addressed in turn.

### III

### A

Schultz first contests the seizure of the marijuana from his property by asserting that it was not actually in "plain view." Def.'s Mot. 8. The "plain view" doctrine is an exception to the warrant requirement that provides, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (quoting *Herndon*, 501 F.3d at 692).

Contrary to Schultz's contention, at least some of the marijuana plants he was growing were in plain view.[5] But even assuming the marijuana's "incriminating nature" was readily

---

[5] The government seized 584 plants from Schultz's property, and each was housed in either a truck box (with no wheels lying directly on the ground), a truck box topper that had been flipped upside down, or a number of large black pots nearby. In his motion to suppress, Schultz argues that "the items seized were approximately forty yards from the road. Further, the items . . . were obstructed by a house, trees, bushes, and two dog pens." Def.'s Mot. 8. Testimony from the hearing made clear that the plants were around forty yards from the roadway, but the photographic evidence demonstrated that Schultz's house and his dog pens are not between the location of the plants and the road. Further, photographs taken by the government (albeit almost one year later) indicate that Schultz's truck box and the surrounding area is visible from Washburn Road (Schultz testified the truck box is still in the same location as it was the day the marijuana was seized).

apparent (a proposition not beyond doubt), the government has not demonstrated that Officers Nitz and Wetzel had a lawful right to access and seize the plants. Accordingly, the warrantless seizure is not justified by the applicability of the plain view exception.

To be sure, the final aspect of the "plain view" doctrine "requires that an officer have a lawful right of access to the object at issue." *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002). As the Supreme Court noted in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971),

> plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Id*. at 468. Generally, "an officer should get a warrant if possible before he seizes an item in plain view. He cannot seize absent exigent circumstances. If he could obtain a warrant, then he cannot use the 'plain view' exception for the evidence." *McLevain*, 310 F.3d at 443 (citing *Horton v. California*, 496 U.S. 128, 137 n.7 (1990)).

As in *McLevain*, where a police officer "suspected items were drug paraphernalia," the officers in this case "should have sought a warrant" before seizing marijuana plants that were in plain view because "[t]he evidence was not going anywhere." *Id*. at 443. As Schultz testified,

---

At the hearing, defense counsel made much of the fact that marijuana plants were no more than 18" tall, that many of them sat in a truck box which was 18" deep, and that Schultz had stacked plywood boards and tires around the truck box to further conceal the plants inside. The point is well taken; the plants inside the truck box would have been difficult to see from the road. But those are not plants Officer Wetzel observed (although he did see the truck box from the road, Wetzel did not notice the plants inside). Officer Wetzel indicated that he saw "a truck bed with a topper and also . . . some black pots sitting on the ground near in that vicinity." May 23, 2013 Hr'g Tr. 6. He continued, "there was suspected marijuana growing in those pots." *Id*. Schultz testified, although reluctantly, that he did have marijuana plants in black pots, on the ground, outside of the truck box and topper. *Id*. at 66 (there were a couple plants "in pots outside the truck bed, on the ground"). Thus, at least the marijuana plants housed in the black planters were in plain view from Washburn Road the day they were observed by Officer Wetzel.

he had no idea an anonymous citizen had called in a tip about his marijuana operation. May 13, 2013 Hr'g Tr. 68.

The plain view doctrine does not absolve the officers' warrantless seizure of the marijuana from Schultz's residence because the officers did not have lawful access to the evidence.[6]

**B**

Despite the inapplicability of the plain view doctrine, the officers' warrantless search and seizure may yet be excused if they obtained consent from Mr. Schultz. Upon review, however, the government has not met its burden of demonstrating that Schultz provided voluntary consent for the search of his premises and the subsequent seizure of his marijuana.

It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search. *United States v. Carter*, 378 F.3d 584, 587 (citing *Davis v. United States*, 328 U.S. 582, 593–94 (1946)). Consent to a search "may be in the form of words, gesture, or conduct." *Carter*, 378 F.3d at 587 (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)). In whatever form, consent has effect only if it is given freely and voluntarily. *Carter*, 378 F.3d at 587 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The government bears the burden of establishing that Defendant's consent to the search was fully and voluntarily given. *See United States v. Williams*, 604 F.2d 1102, 1125 (8th Cir. 1979) ("The government has the burden of proving that the consent was fully and voluntarily given."); *United States v. Matlock*, 415 U.S. 164, 179 (1974) ("the Government

---

[6] Although the officers could have obtained lawful access through Schultz's consent, as will be discussed, had Schultz consented to search (thereby providing access) the plain view doctrine would be rendered unnecessary.

- 9 -

sustained its burden of proving by the preponderance of the evidence that Mrs. Graff's voluntary consent to search . . . was legally sufficient.").

**1**

During the evidentiary hearing, Schultz contested whether consent was obtained. His brief, however, focused on the fact that his property contained "No Trespassing" signs, and therein he argues that "the officers had no legal right to be on [his] property, and therefore did not have the legal right to seize any evidence." Def.'s Mot. at 7. Schultz is mistaken in this assertion.

It is true that the officers entered Schultz's property uninvited despite signs warning against trespassing. Such conduct, however, has been deemed lawful under the "knock and talk" investigative technique. "Police officers are permitted to enter private property and approach the front door in order to ask questions or ask for consent to search the premises." *Hardesty v. Hamburg Tp.*, 461 F.3d 646, 654 (6th Cir. 2006); *see also United States v. Chambers*, 395 F.3d 563, 568 n.2 (6th Cir. 2005) ("Courts generally have upheld [the knock and talk] investigative procedure as a legitimate effort to obtain a suspect's consent to search.")).

Here, the officers entered Defendant's property (his driveway) with the intent of obtaining consent to search his premises. The officers did not draw their weapons or use coercive tactics; but simply told Schultz why they were there. Therefore, the officers did not violate Schultz's rights when they entered his property to engage in investigation-related conversation. *See Hardesty*, 461 F.3d at 654 ("the Hamburg Officer's entry into the curtilage in order to effectuate the knock and talk investigative technique did not violate Plaintiffs' Fourth Amendment rights.").

**2**

However, to validate the warrantless search and seizure, the officers must have obtained voluntary consent after they made contact with Schultz. As with the plain view exception, a search conducted pursuant to consent is "one well-established exception" to the warrant requirement. *United States v. Starnes*, 501 F. App'x 379, 387 (6th Cir. 2012) (brackets omitted). The government bears the burden to prove, "by a preponderance of the evidence and through clear and positive testimony, that 'valid and voluntary consent to the search was obtained.'" *Id.* (quoting *United States v. Davis*, 283 F. App'x 370, 372–73 (6th Cir. 2008)). The government has not sustained this burden, and the evidence that was seized in violation of Mr. Schultz's Fourth Amendment rights will be suppressed.

In its brief, the government claims that "[b]eyond the plain view argument, defendant voluntarily consented to the search of his home and residence." Pl.'s Resp. 5. To be voluntary, Schultz's consent to the search "must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *United States v. Scott*, 578 F.2d 1186, 1188–89 (6th Cir. 1978). Because no single fact is determinative of the voluntariness of a consent to search, voluntariness is to be determined "from the totality of all the circumstances." *Id.* at 1189 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

Here, the totality of the circumstances weighs in favor of suppression. The government has not shown by a preponderance of the evidence that Schultz provided voluntary consent to the search of his property.

Detective Nitz testified that Schultz told him to "come on back," and then led him to the marijuana grow operation. But Schultz directly contested this version of events. *See* May 13, 2013 Hr'g Tr. 74. Schultz explained that he demanded to see a warrant as soon as the officers

approached, but Officer Wetzel discounted the need for one and began moving around the property. Meanwhile, according to Schultz, Detective Nitz menaced him with the possibility of jail time unless he consented to a search.

The government has not produced evidence demonstrating, by a preponderance, voluntary consent. It is notable that Officer Wetzel was involved with "securing the scene," but he was far enough away that he could not hear Schultz provide consent to search his land. Wetzel's inability to hear Schultz give consent is consistent with Schultz's description of the events; that Officer Wetzel, who had been at the property before, walked off to investigate while Detective Nitz remained for questioning. When Wetzel visually located the marijuana plants, he interrupted Detective Nitz's questioning of Schultz with his command that they follow him.

Based on the totality of the circumstances, the government has not demonstrated that Schultz gave voluntary consent before the officers conducted a search of his property and discovered his marijuana plants.

**IV**

Accordingly, it is **ORDERED** that Darald Schultz's motion to suppress and dismiss is **GRANTED** in part.

It is further **ORDERED** that the marijuana seized on June 19, 2012 from Darald Schultz's land is deemed **SUPPRESSED**.

Dated: May 29, 2013                                   s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 29, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS